# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KELLY THEONNES,
> Appellant,

v.

DEPARTMENT OF VETERANS
AFFAIRS,
> Agency.

DOCKET NUMBER
DA-1221-17-0035-W-1

DATE: January 26, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Isaac P. Hernandez, Esquire, Phoenix, Arizona, for the appellant.

Sean Andrew Safdi, Lakewood, Colorado, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

The agency has filed a petition for review, and the appellant has filed a cross petition for review of the initial decision, which granted in part the appellant's request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). For the reasons discussed below, we DENY the agency's petition for review and GRANT the appellant's cross petition for review. Except as expressly MODIFIED by this Final Order to clarify the basis for denying corrective action in connection with the appellant's allegations of hostile work environment and to grant corrective action in connection with her 14-day suspension, we AFFIRM the initial decision.

## BACKGROUND

¶2      The appellant is employed as a GS-11 Licensed Marriage and Family Therapist with the agency's Readjustment Counseling Service (RCS) in El Paso, Texas. Initial Appeal File (IAF), Tab 1 at 8. On April 25, 2016, she sought corrective action from the Office of Special Counsel (OSC) alleging that, in retaliation for her disclosures of wrongdoing by her supervisor, disclosures regarding poor patient care and services to a Member of Congress, supporting a coworker's equal employment opportunity (EEO) case, and filing an EEO and an OSC complaint, the agency counseled her, proposed to suspend her for 7 days, issued her a letter of admonishment, suspended her for 14 days, rated her overall performance as "fully successful," rather than "outstanding," for fiscal years (FY) 2013 through 2015, denied her an increase in salary, disrupted the timely payment of her salary, and subjected her to a hostile work environment from 2013 through 2016. *Id.* at 19-23. On August 17, 2016, OSC informed the appellant it had

terminated its inquiry into her allegations and notified her of her right to seek corrective action from the Board. *Id.* at 81-82.

¶3  The appellant timely filed the instant IRA appeal and requested a hearing. IAF, Tab 1. In an order and summary of a telephonic status conference, the administrative judge found that the appellant established jurisdiction over her IRA appeal by showing that she exhausted her administrative remedy with OSC and by nonfrivolously alleging that she made at least one protected disclosure that was a contributing factor in a personnel action. IAF, Tab 11 at 1-3. After holding a hearing, the administrative judge issued an initial decision granting the appellant's request for corrective action over her FY 2014 and FY 2015 performance appraisals but denying corrective action regarding the other alleged personnel actions. IAF, Tab 41, Initial Decision (ID).

¶4  The agency has filed a petition for review of the initial decision, and the appellant has responded. Petition for Review (PFR) File, Tabs 1, 8. The appellant has filed a cross petition for review of the initial decision, and the agency has responded. PFR File, Tabs 7, 10.

## ANALYSIS[2]

¶5  Under the Whistleblower Protection Enhancement Act of 2012 (WPEA),[3] the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations of the following: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the protected disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by

---

[2] We have reviewed the relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

[3] The relevant events occurred after the December 27, 2012 effective date of the WPEA. Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476. Therefore, we have applied the WPEA to this appeal.

5 U.S.C. § 2302(a).  *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).  Once an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence.  *Id.*  If the appellant proves that a protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to demonstrate, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity.  5 U.S.C. § 1221(e); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

¶6    In the initial decision, the administrative judge found that the appellant established jurisdiction over her IRA appeal by exhausting her administrative remedies and by making the requisite nonfrivolous allegations.  ID at 5.  He further found that she proved by preponderant evidence that all of her exhausted disclosures and activities were protected and that the agency subjected her to covered personnel actions when it proposed to suspend her for 7 days, issued her a letter of admonishment, suspended her for 14 days, rated her as "fully successful" rather than "outstanding" in three performance appraisals, and denied her a step increase.[4]  ID at 6-18.  He found, however, that the appellant failed to establish that her written counseling, alleged salary disruption, and hostile work environment claim were covered personnel actions.  ID at 14-15, 18-22.  The administrative judge further found that the appellant proved that her protected

---

[4]  Specifically, the administrative judge found that the following disclosures and activities by the appellant were protected:  (1) reporting in 2013 that an electronic management system lost patient information; (2) reporting to the agency's Inspector General and agency leaders in January 2013 that her supervisor engaged in inappropriate financial transactions with patients; (3) reporting to her managers in January or February 2013 that her supervisor was attempting to bribe other employee witnesses in an EEO matter; (4) providing testimony in January 2013 supporting a coworker's EEO complaint; (5) filing an EEO complaint in April 2015 seeking to remedy whistleblower reprisal and providing testimony supporting it in October and December 2015; (6) making multiple complaints to various members in her chain of command from 2013 through the present regarding the hostile work environment created by her supervisor; and (7) filing an OSC complaint alleging misconduct and retaliation by her supervisor that was closed in July 2013.  ID at 6-13.

disclosures and activities were a contributing factor in the covered personnel actions by virtue of the knowledge/timing test. ID at 22-24. He concluded, however, that the agency established by clear and convincing evidence that, except for the FY 2014 and FY 2015 performance appraisals, it would have taken the personnel actions in the absence of the appellant's protected disclosures and activities. ID at 24-49. Accordingly, as noted above, the administrative judge granted corrective action only for the FY 2014 and FY 2015 performance appraisals. ID at 48.

¶7 On review, the appellant argues that the administrative judge erred in finding that her hostile work environment claim did not constitute a covered personnel action and that the agency established by clear and convincing evidence that it would have suspended her for 14 days absent her protected activity and disclosures. PFR File, Tab 7 at 5-15. The agency argues that the administrative judge erred in finding that it did not meet its burden to show by clear and convincing evidence that it would have rated the appellant "fully successful" in FY 2014 and FY 2015 in the absence of her protected activity and disclosures.[5] PFR File, Tab 1 at 5-10.

---

[5] On review, the agency maintains its position that the appellant's EEO complaint did not constitute protected activity but acknowledges that she engaged in other protected activities and disclosures. PFR File, Tab 1 at 4 n.1. As noted in the initial decision, the appellant's EEO complaint alleged that she was being subjected to a hostile work environment, in part, in reprisal for her disclosures that her supervisor tried to bribe someone and had business transactions with patients. ID at 11; IAF, Tab 9 at 25-26; Tab 25 at 11-12, 14, 31, 96, 162-63, 173-76, 263. We agree with the administrative judge that the appellant's EEO complaint constituted protected activity under section 2302(b)(9)(A)(i). *See Bishop v. Department of Agriculture*, 2022 MSPB 28, ¶¶ 15-16 (explaining that protected activity under section 2302(b)(9)(A)(i) includes filing an EEO complaint that seeks to remedy reprisal for disclosing information that an employee reasonably believes evidences a violation of law, rule, or regulation). The parties have not challenged the administrative judge's findings that the appellant proved that her other disclosures and activities were protected and that the agency subjected her to covered personnel actions when it proposed her suspension, admonished her, suspended her for 14 days, rated her as "fully successful," and denied her a step increase. PFR File, Tabs 1, 7-8, 10. In addition, the parties have not challenged the administrative judge's finding that the appellant failed to establish that the written

<u>The appellant failed to establish that her allegations of hostile work environment amount to a covered personnel action.</u>

¶8    Under both the WPEA and its predecessor, the Whistleblower Protection Act (WPA), a "personnel action" is defined to include, among other enumerated actions, "any other significant change in duties, responsibilities, or working conditions[.]" 5 U.S.C. § 2302(a)(2)(A)(xii).  The legislative history of the 1994 amendment that added this provision to the WPA indicates that "any other significant change in duties, responsibilities, or working conditions" should be interpreted broadly, to include "any harassment or discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, and should be determined on a case-by-case basis."  140 Cong. Rec. H11,419, H11,421 (daily ed. Oct. 7, 1994) (statement of Rep. McCloskey), cited in *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 14;*see Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015) (remanding an appeal so that an administrative judge could address an appellant's claim that the agency subjected her to a hostile work environment under section 2302(a)(2)(A)(xii)).  In *Savage*, the Board stated that a hostile work environment itself may constitute a covered personnel action under the WPA.  *Savage*, 122 M.S.P.R. 612, ¶ 23.  Subsequently, however, the Board clarified in *Skarada* that, although the term "hostile work environment" has a particular meaning in other contexts, allegations of a hostile work environment may establish a personnel action in an

counseling and salary disruption do not constitute personnel actions under the WPEA. *Id.*  The parties further have not challenged the administrative judge's determination that the agency proved by clear and convincing evidence that it would have taken the following actions against the appellant even absent her protected disclosures and activities:  proposed to suspend her for 7 days, issued her a letter of admonishment, rated her overall performance as fully successful in her FY 2013 performance appraisal, and denied her a step increase. *Id.*  We have reviewed the record, and discern no basis to disturb these well-reasoned findings. *See Crosby v. U.S. Postal Servic*e, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility).

IRA appeal only if they meet the statutory criteria, i.e., constitute a significant change in duties, responsibilities, or working conditions. *Skarada*, 2022 MSPB 17, ¶ 16 (citing 5 U.S.C. § 2302(a)(2)(A)). Thus, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Id.*

¶9    In the initial decision, the administrative judge, who did not then have the benefit of the Board's decision in *Skarada*, relied, in part, on case law relevant to establishing a hostile work environment under Title VII of the Civil Rights Act of 1964. ID at 19-22 (citing, among other cases, *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Gregory v. Department of the Army*, 114 M.S.P.R. 607, ¶¶ 25, 31 (2010)). In light of *Skarada*, however, reliance on Title VII standards to determine whether agency actions amount to a personnel action that may be the subject of an IRA appeal is incorrect. *See Skarada*, 2022 MSPB 17, ¶ 16. Accordingly, we modify the administrative judge's analysis of the appellant's hostile work environment claim consistent with this section, still concluding that the appellant failed to establish that the agency subjected her to a significant change in duties, responsibilities, or working conditions within the meaning of section 2302(a)(2)(A)(xii).

¶10    The appellant alleged below that, in retaliation for her protected activity and disclosures, the agency harassed her and subjected her to a hostile work environment, which involved "increased scrutiny, harsher discipline, and generally less favorable working conditions than similarly situated employees." IAF, Tab 22 at 4-7. At the hearing, she testified that in December 2013 her supervisor moved her and her coworker, a Program Specialist, to an unsafe and uncomfortable office space away from their colleagues and that the move was supposed to be temporary but lasted for 3 years. IAF, Tab 38, Hearing Compact Disc (HCD) (testimony of the appellant). In her closing brief, the appellant

generally stated that the agency subjected her to a hostile work environment and that her office relocation changed the terms and conditions of her employment. IAF, Tab 39 at 4-5, 25-26. The record also contains reports from two fact-finding investigations, the appellant's EEO complaint and an amendment, and a transcript of her interview with the EEO investigator, which set forth numerous specific incidents that she alleged contributed to the hostile work environment.[6] IAF, Tab 18 at 36-37, 46; Tab 19 at 16-129; Tab 25 at 90-109, 154-267; Tab 27 at 140.

¶11     In the initial decision, the administrative judge, relying mainly on allegations from the appellant's EEO matter, summarized the allegations in support of her hostile work environment claim as follows: the agency moved her and the Program Specialist to new offices in an isolated area that experienced wide variations of temperature and leaks and required her to be alone when meeting with clients, which made her feel unsafe; supervisors were rude to her, yelled at her, accused her of writing emails that bordered on being disrespectful, and counseled her for sending an unprofessional and a disrespectful text; the agency failed to communicate with her or explain its reasoning for decisions; the agency changed or restricted her duties without explanation, including telling her not to see clients on a weekly basis, relieving her of her duties as back-up timekeeper, requiring her to adhere to a different standard concerning

---

[6] In her April 6, 2015 formal EEO complaint, the appellant alleged that the agency retaliated against her when it admonished her on January 29, 2015, and when it subjected her to harassment and a hostile work environment based on 34 separate incidents occurring between January 2013 and March 2015. IAF, Tab 25 at 90-109. By notice dated May 22, 2015, the agency's Office of Resolution Management (ORM) notified her that it had accepted the admonishment and hostile work environment claim based on 22 events for investigation. *Id.* at 119-22. On October 7, 2015, the appellant amended her hostile work environment claim to include an additional four events occurring in September and October 2015. IAF, Tab 27 at 140. ORM accepted the additional events for investigation. *Id.* at 134-35. After completing the investigative report and supplemental investigative report, IAF, Tabs 25-27, the appellant requested a final agency decision, IAF, Tab 9 at 58. In a June 9, 2016 final agency decision, the agency's Office of Employment Discrimination Complaint Adjudication determined that the appellant failed to prove any of her claims. *Id.* at 35-57.

participation in outreach, and preventing her from serving on a professional standards board; and the agency delayed approving her requests for compensatory time and leave under the Family and Medical Leave Act of 1993 (FMLA). ID at 19-22. The administrative judge found, however, that the appellant's FMLA request was actually approved less than 2 weeks after her initial request. ID at 21. He further found that, although the appellant described a work environment in which she allegedly was yelled at or humiliated, she proffered little, if any, testimony or affidavits from coworkers who witnessed this hostile behavior. ID at 20-21. In sum, the administrative judge concluded that the agency actions alleged by the appellant were discrete, unrelated events and that, even when considered collectively, were not so severe that a reasonable person would believe they created an impermissible alteration in the terms and conditions of her employment. ID at 22.

¶12 On review, the appellant does not challenge the administrative judge's findings regarding most of the incidents that gave rise to her harassment claim. PFR File, Tab 7. We decline to disturb these well-reasoned findings, except to modify them to find that the appellant failed to prove they amounted to a significant change to her duties, responsibilities, or working conditions. *Skarada*, 2022 MSPB 17, ¶ 16. The appellant argues, however, that the administrative judge failed to properly weigh the evidence and erred in finding that her allegations concerning a hostile work environment did not constitute a covered personnel action. PFR File, Tab 7 at 5-7. Specifically, she reiterates her contention that her relocation to an office away from the rest of the team for 3 years constituted a significant change to her working conditions, threatened her safety, and interfered with her ability to perform her duties. *Id.* She suggests that this relocation alone was a significant change in her working conditions.[7] *Id.*

---

[7] In support of this argument, the appellant states that the Board has held that a GS-15 employee's reassignment to a GS-5 work cubicle constituted a personnel action. PFR File, Tab 7 at 7 (citing *Coons v. Department of the Treasury*, 85 M.S.P.R. 631,

at 7.   In response, the agency argues that the appellant's office move was voluntary and that she did not request to be moved back until June 2016 when she found the temperature of the office unacceptable.[8]   PFR File, Tab 10 at 6-7.   The agency further argues that the administrative judge's evaluation of the factual dispute over the voluntariness of the appellant's office relocation was a credibility determination that is entitled to significant deference.   *Id.* at 8-9.

¶13        Contrary to the agency's argument on review, the administrative judge did not make any credibility findings in assessing the appellant's claim that the agency subjected her to a significant change in working conditions and did not make a specific finding that the appellant's office relocation was voluntary.   ID

¶ 19 (2000), *overruled on other grounds by Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶ 7 n.1 (2001)).   The appellant's description of the holding in *Coons*, however, is incomplete.   In *Coons*, the Board found that the appellant nonfrivolously alleged he suffered a personnel action when he was reassigned to a different job site and placed in a position with "no meaningful duties, no telephone, no support staff, no title, no position description, no management, no expectations and no performance plan."   85 M.S.P.R. 631, ¶¶ 2, 19.   Because the appellant has not alleged that her office relocation involved any change to her position description or duties, we find that *Coons* is distinguishable from the instant appeal.

[8] The agency also argues on review that the appellant failed to exhaust her office relocation claim before OSC.   PFR File, Tab 10 at 5.   The Board has recently clarified the substantive requirements of exhaustion.   *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11.   The requirements are met when an appellant has provided OSC with sufficient basis to pursue an investigation.   The Board's jurisdiction is limited to those issues that have been previously raised with OSC.   However, an appellant may give a more detailed account of her whistleblowing activities before the Board than she did to OSC.   An appellant may demonstrate exhaustion through her initial OSC complaint, evidence that she amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations, and her written responses to OSC referencing the amended allegations.   She may also establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that she raised with OSC the substance of the facts in the Board appeal.   *Id*.   Here, in her OSC submissions, the appellant alleged that, beginning in 2013, the agency subjected her to a hostile work environment, harassed her, and significantly changed her work environment by subjecting her to "an unsafe and unhealthy work environment and iso[lating her] from participation of [agency] events."   IAF, Tab 8 at 32, 75-78, 81, 83.   We find that the appellant's allegations to OSC were enough to provide OSC with a sufficient basis to investigate the appellant's office relocation.

at 21-22. Rather, the administrative judge found that the incidents asserted by the appellant in support of her hostile work environment claim, including the office relocation, simply did not amount to a significant change in her working conditions. *Id.* Therefore, we find no merit to the agency's argument that the administrative judge made a credibility-based determination regarding the appellant's hostile work environment claim that is entitled to significant deference.

¶14    Nonetheless, even if the agency instructed the appellant to move to the new office or denied her request to return to the main office, she has not shown that the agency subjected her to a significant change in her working conditions by relocating her office. Despite her contention that her office frequently experienced temperature and water issues, her supervisor testified that he only received one complaint from the appellant regarding leaking in July 2015 and several complaints regarding temperature issues in September 2016. HCD (testimony of the appellant's supervisor). In addition, he testified that he promptly took action to remedy the situation by, for example, offering to have her temporarily relocate offices and having the air conditioning unit replaced. *Id.*; IAF, Tab 24 at 81. Consistent with the appellant's supervisor's testimony, the record contains only one email from the appellant complaining of leaks in July 2015 and three emails regarding temperature issues from September 2016.[9] IAF, Tab 24 at 62, 73, 79-81. In addition, the appellant returned to the main office building shortly after complaining about the leaks in September 2016. HCD (testimony of the appellant); IAF, Tab 24 at 144. We find that occasional temperature discomfort and one instance of water leaking from the ceiling over the course of 3 years did not have practical and significant effects on the overall

---

[9] The record also contains complaints regarding the office temperatures in January 2013. IAF, Tab 19 at 12, 120, Tab 24 at 119, Tab 25 at 107-08, 278-79. However, these complaints occurred before the appellant relocated.

nature and quality of the appellant's working conditions. *See Skarada*, 2022 MSPB 17, ¶¶ 15, 23.

¶15 The appellant also alleged that her relocated office was far away from the main office, which allowed the agency to exclude her from information and communication, isolated her from the rest of the staff, and placed her at risk when she had to meet with clients alone. HCD (testimony of the appellant). Although it is clear from the record that the appellant's office was separate from the main office suite and her coworkers, except the Program Specialist, she has not provided specific information or evidence concerning the distance between the two places, nor has she identified any particular office information or knowledge that she did not receive due to the physical separation of her office. She testified that, due to the distance between her office and the main office, the office staff did not tell her when her clients arrived. *Id.* However, she has not explained how the unavailability of office staff to alert her to her clients' arrival constituted a significant change to her working conditions, rather than a minor inconvenience. Thus, the appellant has not shown that her physical separation from the main office and most of her coworkers constituted a significant change to her working conditions. *See Skarada*, 2022 MSPB 17, ¶ 23 (stating that at the merits phase of an IRA appeal, the appellant must provide sufficient information and evidence to allow the Board to determine whether the agency's alleged action or actions were "significant"); *Shivaee v. Department of the Navy*, 74 M.S.P.R. 383, 388-89 (1997) (finding that an employee failed to nonfrivolously allege that his relocation from a building on the naval base to a building located outside of the base constituted a personnel action because he failed to allege sufficient information for the Board to determine whether his move was "significant," such as whether other employees in his position worked outside the base and whether it was common for such employees to be moved from inside the base to outside and vice versa).

¶16      In support her claim that her office location presented a safety risk, the appellant referred to an undated and unsigned narrative assessment, which states the following:

> The Vet Center does have a lovely Marriage and Family Office, however, its location is of some concern due to safety issues. This office is not connected to the Vet Center and therefore, when the [appellant] is meeting with families/couples/individuals there is no way to assure her safety.[10]

IAF, Tab 24 at 223. Although this report opines that the appellant's office location may have presented "some concern" over safety, the appellant did not present evidence establishing that her office was actually unsafe or that she feared for her safety. In response to a question on cross examination at the hearing regarding whether she liked her office location, she testified that it was a "double-edged sword" because she liked having more space but that management used her office location as an excuse to exclude her and not to tell her when her clients arrived. HCD (testimony of the appellant). She did not, however, mention safety concerns in response to this line of questioning. *Id.*

¶17      At another point during the hearing, the appellant testified that, on one occasion, a veteran came into her office unannounced when she was alone and that she felt threatened. *Id.* Although such occurrence is startling, it does not establish that her office's location presented an undue safety risk. In any event, the appellant did not testify that she ever experienced a dangerous situation or that her office was too far removed to call for help in the event of an emergency. *Id.* Moreover, she testified that she could have met with clients in a different location if she ever felt it was appropriate and that she relocated to the main office area within several months after the report suggesting "some concern" about safety. *Id.* Thus, we find that her general allegation about safety based on

---

[10] The appellant attributes this narrative assessment to a July or August 2016 Site Analysis by an RCS manager. IAF, Tab 22 at 6, Tab 39 at 10.

her office's location does not constitute a significant change in her working conditions.

¶18    In light of the foregoing, we find that the conditions alleged by the appellant, collectively and individually, do not establish a significant change in her working conditions.    Therefore, we affirm, as modified to clarify the applicable legal analysis and to supplement the factual findings, *supra* ¶¶ 14-17, the administrative judge's determination that the appellant's allegations regarding hostile work environment do not establish a covered personnel action.

The agency failed to show by clear and convincing evidence that it would have suspended the appellant for 14 days or given her "fully successful" summary performances ratings in FY 2014 and FY 2015 absent her protected activity and disclosures.

¶19    Because the appellant met her burden to prove by preponderant evidence that she made a protected disclosure and engaged in protected activity that was a contributing factor in the agency's decision to take personnel actions against her, we will order corrective action unless the agency shows by clear and convincing evidence that it would have taken the personnel action in the absence of the whistleblowing.[11]  *Supra* ¶ 5.  In determining whether an agency has shown by clear and convincing evidence that it would have taken the personnel action in the absence of the whistleblowing, the Board generally will consider the following factors ("*Carr* factors"):  (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see Carr v. Social Security Administration*, 185 F.3d 1318,

---

[11] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e).

1323 (Fed. Cir. 1999).[12]   The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole.  *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015).  The Board must consider all the pertinent evidence, including evidence that detracts from the conclusion that the agency met its burden.  *Alarid*, 122 M.S.P.R. 600, ¶ 14; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶20      In the initial decision, the administrative judge found that the agency proved by clear and convincing evidence that it would have taken the following personnel actions against the appellant even absent her protected activities and disclosures:  proposal to suspend her in 2013; denial of a salary increase in June 2013; rating her overall performance as "fully successful" in FY 2013; issuing her a January 29, 2015 admonishment; and  imposing a 14-day suspension based on misrepresentation in 2016.  ID at 25-44, 48-49.  He concluded, however, that the agency failed to show by clear and convincing evidence that it would have rated the appellant as "fully successful" in FY 2014 and FY 2015 absent her protected activities and disclosures.  ID at 45-48.  On review, the appellant challenges the administrative judge's finding regarding the 14-day suspension, and the agency challenges his finding regarding the FY 2014 and FY 2015 performance appraisals.[13]  PFR File, Tab 1 at 5-10, Tab 7 at 5-15.

---

[12] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on this issue.  However, as a result of changes initiated by the WPEA, Pub. L. No. 112-199, 126 Stat. 1465, extended for 3 years in the All Circuit Review Extension Act, Pub. L. No. 113-70, 128 Stat. 1894, and eventually made permanent in the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).

[13] The parties do not challenge, and we discern no basis to disturb, the administrative judge's finding that the agency established by clear and convincing evidence that it

¶21    For the reasons that follow, we find that the agency failed to establish by clear and convincing evidence that it would have suspended the appellant for 14 days in the absence of her protected activities and disclosures and modify the initial decision consistent with this section. We affirm the administrative judge's determination that the agency did not meet its burden to show by clear and convincing evidence that it would have given the appellant "fully successful" summary performance ratings in FY 2014 and FY 2015 even absent her protected disclosures and activities.

*14-day suspension*

¶22    On December 3, 2015, the Associate Regional Manager for Counseling proposed to suspend the appellant for 14 days on the basis of one charge of "misrepresentation" supported by the following two specifications:

> Specification 1: Between on or about October 1, 2014 and on or about October 1, 2015, on multiple occasions, you inputted inaccurate information into the [Service Activity Recording System (SARS)] computer system regarding the number of family members seen during client visits. The information that you provided on these multiple occasions was knowingly false, and you provided the inaccurate information with the intention to mislead the Agency.

> Specification 2: On or about September 23, 2015, you submitted a written statement to your supervisor [ ] in which you indicated that the "SARS" computer system automatically "enters an 'extra' number or contact to the session," or words to that effect. The information that you provided was knowingly false, and it was provided with the intention to mislead the Agency.

IAF, Tab 9 at 126-28. In support of its action, the agency provided copies of six "Visit Information" pages completed by the appellant over the course of 3 days in July 2015, each reflecting in the "#SIG/OTH" field that one more family member

---

would have taken the other personnel actions against the appellant absent her protected activities and disclosures. PFR File, Tabs 1, 7-8, 10.

attended the counseling session than actually attended it.[14] *Id.* at 131-32, 134, 136-38.

¶23     In a written response to the proposal notice, the appellant explained that, when entering session information into SARS, she followed the directions on the page to hold down the control key while selecting the names of the family members in attendance and that the system automatically filled in the #SIG/OTH field based on the number of family members selected, erroneously adding one to the number of individuals selected. IAF, Tab 24 at 213. She stated that she assumed that the field "was counting the veteran for a total count of people in the session." *Id.* The appellant further explained that she correctly filled out the narrative section by identifying who attended the session. *Id.* In addition, she submitted statements from two counselors supporting her allegation that the computer system automatically populated the #SIG/OTH field with the number of family members selected plus one. *Id.* at 216-17. Specifically, a letter from a Social Worker provided the following:

> I am writing this statement to confirm that the electronic documentation system used for RCS also known as "SARS" automatically adds 1 person to the session reports when family members are listed as being present. When adding a session where a family member(s) are present, it instructs the user to press control and to highlight each person present in the session. The system automatically fills in the field "#sig/oth" (number of family members in session field) with the number of people highlighted and adding one to include the veteran. This becomes problematic when the veteran is not involved in that specific session. To my knowledge it has done this since this feature/field (number of family members in session field) was added and still does currently.

*Id.* at 216. Another coworker's statement explained that, "to add family members that are in the session, we are to hold down the control key to highlight the names

---

[14] As explained in the initial decision, the "#SIG/OTH" field on the SARS Visit Information page reflects the number of the veteran's significant others attending the session. ID at 34. For example, if the veteran attends the session alone, this field should be "0"; if a spouse and a child attend, this field should be "2." *Id.*

of the family members that are in the session. In doing this, the program automatically adds one additional number." *Id.* at 217. Despite the appellant's explanation and statements, the Acting Regional Manager concluded in a January 7, 2016 decision letter that there was "no indication" that the computer system automatically added one extra family member in the session record and imposed the suspension. IAF, Tab 9 at 84.

¶24     In evaluating the first *Carr* factor, the Board assesses the strength of the agency's evidence in support of the charge brought against the appellant and considers only the evidence that was before the agency at the time it acted. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶¶ 45-46 (2016) (explaining that in evaluating the strength of the agency's evidence in support of its charge, the Board considers the charge brought and not whether the agency could have proven a charge that it did not bring); *Yunus v. Department of Veterans Affairs*, 84 M.S.P.R. 78, ¶ 8 (1999) (explaining that in determining the strength of the agency's evidence, the Board considers the weight of the evidence before the agency when it acted), *aff'd*, 242 F.3d 1367 (Fed. Cir. 2001). To sustain its charge of misrepresentation, the agency had to prove that, as it alleged, the appellant knowingly supplied false information with an intent to mislead the agency. IAF, Tab 9 at 126-28; *see Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 10 (2014) (discussing the elements required to prove a charge of misrepresentation in an adverse action proceeding). Intent to mislead the agency may be established by circumstantial evidence or inferred when the misrepresentation is made with a reckless disregard for the truth or with a conscious purpose to avoid learning the truth. *Boo*, 122 M.S.P.R. 100, ¶ 10. Whether intent has been proven must be resolved by considering the totality of the circumstances, including the appellant's plausible explanation, if any. *Id.*

¶25     Here, the administrative judge found that, although the agency failed to produce sufficiently strong evidence to support the second specification of misrepresentation, the evidence in support of the first specification was

sufficiently strong to support the suspension. ID at 38-40. Specifically, he found that the agency's evidence established that the appellant entered inaccurate information into SARS on at least 6 occasions in July 2015 and that, even if he credited her explanation that a "glitch" in the computer system caused the #SIG/OTH field to automatically populate with an incorrect number, she knew of the issue but failed to fix her entries. ID at 39. Thus, he concluded that the appellant completed the #SIG/OTH field with, at a minimum, a reckless disregard for the truth and that the agency's evidence in support of the action was strong. ID at 38-39.

¶26     The parties do not challenge the administrative judge's determination that the agency's evidence in support of the second specification was weak, PFR File, Tabs 1, 7-8, 10, and we discern no basis to disturb this finding. The appellant argues, however, that the administrative judge erred in finding that the agency provided strong evidence in support of the first specification because the evidence does not establish that she intended to mislead or deceive the agency. PFR File, Tab 7 at 9-10.

¶27     In finding that the appellant knew that the number in the #SIG/OTH field was incorrect when she completed the reports in July 2015, the administrative judge relied, in part, on the appellant's hearing testimony. ID at 39. Because the administrative judge considered evidence that was not before the agency when it acted and, in effect, adjudicated the reasons for the appellant's suspension as if this were an otherwise appealable action, his finding regarding what she knew when she completed the reports is not entitled to deference.[15] *See Yunus*, 84 M.S.P.R. 78, ¶ 14 (declining to afford deference to the administrative judge's

_____

[15] The appellant further argues on review that the administrative judge mischaracterized her testimony insofar as he found that she accurately entered the number of attendees in the progress notes field *because* she knew that the number in the #SIG/OTH field was incorrect. PFR File, Tab 7 at 9-10; ID at 9. We have reviewed the appellant's hearing testimony and agree that the administrative judge mischaracterized this aspect of her testimony. HCD (testimony of the appellant).

findings regarding the first *Carr* factor because he considered evidence that was not before the agency at the time it acted).

¶28    As noted above, in determining whether an appellant had the requisite intent to sustain a charge of misrepresentation, it is appropriate to consider her plausible explanation. *See Boo*, [122 M.S.P.R. 100](#), ¶ 10. Here, the appellant explained that the #SIG/OTH field automatically populated after she followed the on-screen instructions to hold down the control key while selecting the names of the family members in attendance and that she "assumed" that the field represented a count of the total number of people in the session, i.e., the veteran plus family members. IAF, Tab 24 at 213. The appellant further provided two coworker statements supporting her contention. *Id.* at 216-17. Nothing in the agency's evidence refutes her plausible explanation that she did not realize that the field was automatically populating with an incorrect number in early July 2015 or that she should have changed it.[16] We further find that the fact that the appellant entered the correct information in the narrative section, which ultimately allowed her supervisor to identify the discrepancy between the #SIG/OTH field and the actual number of family members who attended the session, suggests that her error was inadvertent rather than intentional.

¶29    In addition, the deciding official testified that, when he decided to impose the appellant's 14-day suspension, he had determined that the appellant was correct that the #SIG/OTH field would automatically populate but that, for him, the issue was that she should have ensured the number was correct before

---

[16] Although the proposed suspension letter states that the appellant submitted inaccurate SARS reports between October 2014 and October 2015, the agency's evidentiary file contains only six reports with allegedly inaccurate information, all of which she completed on July 1, 2, or 7, 2015. IAF, Tab 9 at 131-32, 134, 136-38. According to a report of contact completed by the appellant's supervisor, he noticed discrepancies between the number of family members in the #SIG/OTH field and the individuals identified in the narrative section in the appellant's July 2015 SARS reports and discussed the discrepancies with her in a meeting on August 21, 2015. *Id.* at 140. There is no indication, however, that he previously discussed such issues with her.

submitting the form. HCD (testimony of the deciding official). The deciding official's belief that the appellant should have more thoroughly reviewed her reports to ensure that they were correct, however, does not establish that she intentionally provided incorrect information with the intent to mislead the agency, as expressly alleged in the charge. IAF, Tab 9 at 126; *see Scoggins*, 123 M.S.P.R. 592, ¶ 46.

¶30    In light of the foregoing, we find that the agency did not provide strong evidence in support of the charge of misrepresentation and, therefore, that the first *Carr* factor weighs against the agency.

¶31    When evaluating the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision. *Phillips v. Department of Transportation*, 113 M.S.P.R. 73, ¶ 21 (2010). In the initial decision, the administrative judge assessed the motives of the deciding official, the proposing official, and the appellant's supervisor, who investigated the alleged misconduct and compiled the evidence file in support of the action. ID at 41-42. He found that the appellant's supervisor had a strong motive to retaliate against the appellant because her protected disclosures implicated him and he had knowledge of the disclosures before investigating her for misrepresentation. ID at 41. However, he found that the proposing and deciding officials were not motivated to retaliate against the appellant. ID at 41-42. Therefore, the administrative judge concluded that the second *Carr* factor weighed in favor of the agency. ID at 42. The appellant challenges this finding on review. PFR File, Tab 7 at 10-12.

¶32    First, we agree with the administrative judge's determination that the appellant's supervisor had a strong motive to retaliate against her. ID at 41. It is undisputed that he knew of her protected disclosures and activities and that the agency temporarily reassigned him from his supervisory duties and proposed to suspend him for 10 days as a result of the appellant's disclosing his inappropriate

financial transactions with a patient. ID at 26, 41; IAF, Tab 19 at 4-5. Furthermore, we defer to the administrative judge's finding that the proposing and deciding officials credibly testified that they were not motivated to retaliate against the appellant. ID at 41-42. Nonetheless, we disagree with the administrative judge's conclusion that the second *Carr* factor weighs in the agency's favor.

¶33      In examining retaliatory motive for an agency action, the officials "involved" in the action may encompass more than just the proposing or deciding officials and may include other officials upon whom the proposing or deciding official relied for information. *See Mangano v. Department of Veterans Affairs*, 109 M.S.P.R. 658, ¶ 30 (2008). Here, the proposing and deciding officials relied on the evidentiary package compiled by the appellant's supervisor, including three reports of contact he personally drafted. IAF, Tab 9 at 126-45; HCD (testimony of the deciding and proposing officials). Moreover, in assessing the appropriate penalty, they considered the appellant's prior discipline—namely, a January 29, 2015 admonishment from the appellant's supervisor. *Id.* at 126, 146-47; HCD (testimony of the deciding official). Therefore, we find that the appellant's supervisor, who had a very strong motive to retaliate against her, influenced the agency's action. There also is ample evidence to find that some of the appellant's disclosures reflected poorly on the agency as a whole, as they alleged, inter alia, that the agency lost patient information and that a supervisor engaged in improper financial transactions with a patient. ID at 6-13; *see Smith v. Department of the Army*, 2022 MSPB 4, ¶¶ 28-29 (considering under the second *Carr* factor whether a "professional retaliatory motive" existed because the significant negative publicity resulting from the disclosures reflected poorly on the agency and its officials). In conclusion, we hold that the second *Carr* factor weighs against the agency.

¶34      Regarding the third *Carr* factor, the administrative judge found that there was no evidence that the agency took similar actions against similarly situated

nonwhistleblowers and concluded that the third *Carr* factor was not a "significant factor" in his analysis. ID at 43. The appellant challenges this finding on review, arguing that *Carr* factor three weighs against the agency because she provided evidence reflecting that other employees engaged in the same conduct but were not disciplined. PFR File, Tab 7 at 14-15. The agency argues that the administrative judge properly found that the third *Carr* factor was neutral because the appellant's supervisor testified that he monitored all of his counselors' SARS entries but had never observed another counselor engage in this type of conduct and because the deciding official likewise testified that he had never seen this type of conduct. PFR File, Tab 10 at 17.

¶35    As discussed above, the appellant provided the agency with two coworker statements agreeing with her that the #SIG/OTH field automatically populated with an incorrect number. IAF, Tab 24 at 216-17. In one of the statements, the coworker observed that she was not aware of the problem until the appellant pointed it out to her in December 2015. *Id.* at 217. Although we disagree with the appellant's contention that this evidence proves that other employees engaged in the same conduct, i.e., submitting SARS reports containing an inaccurate number in the #SIG/OTH field, it appears likely that other counselors did so. The Board previously has adopted the reasoning of the U.S. Court of Appeals for the Federal Circuit that "the failure to produce such evidence if it exists 'may be at the agency's peril,' and 'may well cause the agency to fail to prove its case overall.'" *Smith*, 2022 MSPB 4, ¶ 30 (quoting *Whitmore*, 680 F.3d at 1374). The agency provided testimony from the appellant's supervisor and the deciding official that they had not observed similar inaccuracies in other employees' reports. HCD (testimony of the appellant's supervisor and the deciding official). However, despite having access to this information, the agency provided no evidence of its efforts to ascertain whether other employees had engaged in the same alleged misconduct. Under these circumstances, we find that this *Carr* factor "cut[s] slightly against" the agency. *See Miller v. Department of*

*Justice*, [842 F.3d 1252](#), 1262-63 (Fed. Cir. 2016); *cf. Phillips*, [113 M.S.P.R. 73](#), ¶ 24 (finding that an agency's decision to direct an appellant's reassignment before awaiting a decision on a proposed suspension for the underlying misconduct could be viewed as a failure to conduct an adequate investigation, which in turn might indicate an improper retaliatory motive).

¶36    In sum, we find that the agency's evidence in support of the 14-day suspension was weak when it took the action, that the agency had a significant motive to retaliate against the appellant, and that it did not produce pertinent evidence of its treatment of similarly situated nonwhistleblowers despite indications others might have engaged in the same conduct. We therefore find that the agency has not met its burden of proving by clear and convincing evidence that it would have suspended the appellant for 14 days absent her protected activities and disclosures.[17]

*FY 2014 and FY 2015 performance appraisals*

¶37    From FY 2012 through FY 2015, the appellant's performance standards included the critical elements of customer service, clinical services, and program management/administration. IAF, Tab 17 at 48, Tab 18 at 7, 12, 18. For each element, the possible levels of achievement are exceptional, fully successful, or unacceptable. *Id.* The overall performance rating may be outstanding, excellent, fully successful, minimally satisfactory, or unacceptable depending on the levels of achievement for each element. IAF, Tab 17 at 49, Tab 18 at 8, 13, 19. To receive an "outstanding" overall performance rating, the achievement level for all elements must be exceptional. *Id.*

---

[17] In light of this finding, we find it unnecessary to address the appellant's argument that the agency committed procedural and due process errors in issuing the proposed removal and sustaining the penalty. PFR File, Tab 7 at 13-14. We also find it unnecessary to address her argument that her supervisor was a nonwhistleblower who was treated more favorably. *Id.* at 17. Finally, we do not reach the appellant's argument that she did not call another witness to testify regarding her supervisor's motive to retaliate because she incorrectly believed that he was not involved in the suspension action. *Id*. at 12-13.

¶38    In FY 2012, the appellant's supervisor rated her as exceptional in each element, and she consequently received a summary performance rating of "outstanding." IAF, Tab 17 at 48-49. In FY 2013, FY 2014, and FY 2015, however, the appellant's supervisor rated her as fully successful in at least one critical element, and she therefore received a summary performance rating of "fully successful." IAF, Tab 18 at 7-8, 12-13, 18-19. The appellant argued that the agency lowered her FY 2013, FY 2014, and FY 2015 performance ratings in retaliation for her protected activities and disclosures. IAF, Tab 11 at 3.

¶39    In considering the appellant's FY 2013 performance appraisal, the administrative judge found that the first *Carr* factor weighed in favor of the agency because it clearly articulated its reasoning for not rating the appellant exceptional in, at least, the customer service critical element, which was sufficient to justify an overall "fully successful" performance rating. ID at 44. In so finding, he relied on the appellant's supervisor's testimony that, in rating the appellant as "fully successful" in all four elements for FY 2013, he considered the following: the acting team leader counseled the appellant for disrespectful conduct in February 2013; her case management numbers were among the lowest in the office; and she failed to stop a heated discussion while she was in charge of a staff meeting.[18] *Id.*; IAF, Tab 25 at 290-91. The administrative judge also found that the third *Carr* factor weighed in favor of the agency, observing that the appellant and her supervisor both testified that, in FY 2013, only one employee received an overall performance rating better than "fully successful." ID at 47. Although the administrative judge found that the second *Carr* factor weighed against the agency because, as discussed above, the appellant's supervisor had a significant motive to retaliate against her, he concluded that the agency established by clear and convincing evidence that it would have rated the

---

[18] On February 5, 2013, the acting team leader issued the appellant a written counseling regarding an unprofessional and a disrespectful text message. IAF, Tab 17 at 39-40.

appellant as "fully successful" in FY 2013 even absent her protected activities and disclosures. ID at 48.

¶40    Regarding the FY 2014 and FY 2015 performance appraisals, the administrative judge found that the agency failed to produce sufficient evidence supporting the ratings and that the first *Carr* factor therefore weighed against the agency. ID at 45-47. For FY 2014, he observed that the appellant's supervisor rated her as exceptional in all elements except for the critical element of customer service, in which he rated her as "fully successful." ID at 45; IAF, Tab 18 at 12-13. The administrative judge concluded that the agency produced "little, if any" evidence supporting this rating and that the appellant's self-appraisal provided "uncontroverted evidence" supporting a higher rating in the customer service critical element. ID at 45. For FY 2015, the administrative judge observed that the appellant's supervisor rated her as fully successful in the critical elements of customer service and clinical services but that the agency failed to produce any evidence supporting these ratings. ID at 45-46; IAF, Tab 18 at 18-19. He found that the second *Carr* factor likewise weighed against the agency because, as discussed above, the appellant's supervisor had a strong motive to retaliate against her and his supervisors, who approved the rating, similarly had a motive to retaliate. ID at 46-47. Lastly, the administrative judge found that the record did not contain sufficient evidence concerning actions taken against similarly situated nonwhistleblowers and that the third *Carr* factor was not a significant factor in his analysis. ID at 47-48. The administrative judge found, therefore, that the agency failed to show by clear and convincing evidence that it would have rated the appellant as "fully successful" in FY 2014 and FY 2015 absent her protected disclosures and activities. ID at 48.

¶41    On review, the agency challenges the administrative judge's finding regarding the first *Carr* factor in his consideration of the FY 2014 and FY 2015 performance appraisals, arguing that he failed to consider relevant evidence and

ignored the fact that agency regulations require specific evidence of achievement supporting a higher than "fully successful" rating.[19] PFR File, Tab 1 at 5-11.

¶42    As the agency points out, its guidance regarding performance ratings provides that an employee's performance must "exceed[] normal expectations" to justify an exceptional level of achievement for a particular element. PFR File, Tab 1 at 6; Veterans Administration Handbook 5013, Section I-2. However, when, as here, an appellant establishes a prima facie case of whistleblower reprisal, the agency bears the burden to clearly and convincingly establish that it would have taken the same action in the absence of her protected activities and disclosures. *Supra* ¶ 5. Therefore, notwithstanding the high threshold for an employee to achieve an exceptional level of achievement in a particular element, the agency must come forward in this context with sufficient evidence to support its giving the appellant lower ratings in the critical elements of clinical and customer services than she previously received.

¶43    As to the FY 2015 performance appraisal, the agency argues that the administrative judge erred in disregarding the appellant's January 29, 2015 admonishment, which establishes that her performance did not "far exceed normal expectations."[20] PFR File, Tab 1 at 9. We agree with the administrative judge, however, that the agency failed to produce any evidence showing that the appellant's supervisor considered the admonishment when rating the appellant for FY 2015. ID at 46 n.18. We find, though, that the mere existence of the admonishment, which relates to the customer service critical element, provides some evidence in support of the appellant's fully successful rating in the customer service element for FY 2015.

---

[19] The agency does not challenge, and we find no basis to disturb, the administrative judge's determination that the second *Carr* factor weighs against the agency and that the third *Carr* factor is essentially neutral. ID at 46-48; PFR File, Tab 1.

[20] On January 29, 2015, the appellant's supervisor admonished her for an unreasonable delay in carrying out instructions and refusing to carry out a proper order. IAF, Tab 9 at 146-47.

¶44    Regarding the FY 2014 performance appraisal, the agency argues that the administrative judge failed to consider the appellant's supervisor's EEO affidavit, which, according to the agency, identified specific deficiencies in the appellant's performance for FY 2013 and FY 2014.   PFR File, Tab 1 at 6-7.   In the appellant's supervisor's October 28, 2015 EEO affidavit, he stated that he was the rating official for the appellant in both FY 2013 and FY 2014 and then appeared to discuss only the appellant's FY 2013 performance appraisal.   IAF, Tab 25 at 289.   Specifically, he stated that the rating period went from October 2012 to September 2013 and that the appellant received a written admonishment from the acting team leader in February 2013 for unprofessional and disrespectful conduct, had a "heated discussion" during a meeting on an unspecified date, had low numbers of case management for an unspecified time period, and was disrespectful to her coworkers.   *Id.* at 289-91.   He stated that the only person who received a higher rating "[t]hat year" was the individual who served as acting team leader during his absence.   *Id.* at 291.   It is undisputed that this individual served as acting team leader from January through June 2013.   IAF, Tab 17 at 5, Tab 29 at 5.   As discussed above, the administrative judge considered these performance deficiencies in finding that the first *Carr* factor weighed in favor of the agency for the FY 2013 performance appraisal.   ID at 44; IAF, Tab 25 at 289-91; HCD (testimony of the appellant's supervisor).   We discern no merit to the agency's argument on review that the above statements pertained to the appellant's performance in both FY 2013 and FY 2014.   PFR File, Tab 1 at 7. Therefore, we find that the administrative judge properly considered these statements in connection with the FY 2013 performance appraisal.   ID at 44.

¶45    The agency also argues that the administrative judge failed to consider the appellant's supervisor's hearing testimony, during which he identified specific deficiencies in the appellant's performance from 2013 through 2015.   PFR File, Tab 1 at 6.   At the hearing, the appellant's supervisor testified that he rated the appellant as fully successful because she was "written up" at some point and,

during an unspecified time period, had low case management numbers. HCD (testimony of the appellant's supervisor). We discern no basis to disturb the administrative judge's finding that this testimony corresponded to the appellant's February 2013 written counseling for unprofessional and disrespectful conduct and the low case management numbers for the same year as referenced in the appellant's supervisor's EEO affidavit. IAF, Tab 17 at 39-40, Tab 25 at 289-91. Therefore, we find that the administrative judge properly considered this testimony in evaluating the appellant's FY 2013 performance appraisal. ID at 44.

¶46 The agency further argues that the administrative judge improperly failed to consider the January 2017 fact-finding report, which "could have" allowed the administrative judge to find that the appellant's FY 2014 and FY 2015 summary ratings were justified. PFR File, Tab 1 at 6-7; IAF, Tab 30. In particular, the agency states that the fact-finding report contains statements by the appellant's supervisor concerning "long-standing noncompliance by the appellant" and "her demeaning and offensive interactions with other staff" and that his opinions are reinforced by other employees. *Id*. Although the fact-finding report contains a number of statements by coworkers indicating that it was difficult to work with the appellant, all of the statements were given in January 2017 and none of them refer to her behavior or performance in FY 2014 or FY 2015. IAF, Tab 30 at 7-13. Because the January 2017 fact-finding report postdates the appellant's FY 2014 and FY 2015 performance appraisals by several years and is not relevant to the appellant's performance or behavior in FY 2014 or FY 2015, the administrative judge properly did not consider it in assessing the strength of the agency's evidence. IAF, Tab 30; *see Yunus*, 242 F.3d at 1372.

¶47 After weighing all of the pertinent evidence, including the admonishment, against the agency's significant motive to retaliate against the appellant, we agree with the administrative judge's determination that the agency did not establish by clear and convincing evidence that it would have given the appellant the same summary performance ratings in FY 2014 and FY 2015 in the absence of any

whistleblowing.[21]   *See Rumsey v. Department of Justice*, [120 M.S.P.R. 259](#), ¶¶ 35-38 (2013) (finding that the agency failed to meet its burden to demonstrate independent causation for rating an employee's performance as "successful" when the rating was "somewhat inconsistent" with the agency's perception of the employee's performance in the recent past and the rating official did not provide any explanation as to why she rated the employee's performance as "successful" rather than some other rating).

## CONCLUSION

¶48     For the foregoing reasons, we find that the appellant is entitled to corrective action under [5 U.S.C. § 1221](#)(g)(1) in connection with her 14-day suspension and her FY 2014 and FY 2015 performance appraisals.

## ORDER

¶49     We ORDER the agency to provide the appellant with relief such that she is placed as nearly as possible in the same situation she would have been in had the agency rated her as "outstanding" in FY 2014 and FY 2015 and not suspended her for 14 days. [5 U.S.C. § 1221](#)(g)(1)(A)(i); *see Kerr v. National Endowment for the Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶50     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the

---

[21] Although the appellant's 14-day suspension resulted from her alleged falsified SARS submissions during FY 2015, her supervisor testified that he did not lower her administration/program management rating to account for this alleged misconduct in her FY 2015 performance appraisal because, when he rated her, he had not yet completed his investigation. HCD (testimony of the appellant's supervisor).

Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶51 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶52 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶53 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If

you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. § 1214(g)(2), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

### NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged

prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[22]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[22] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[23]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[23] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                                    /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805. Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete. Missing documentation may substantially delay the processing of a back pay award. **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE: Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐ 1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket. Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐ 2) Settlement agreement, administrative determination, arbitrator award, or order.

☐ 3) Signed and completed "Employee Statement Relative to Back Pay".

☐ 4) All required SF50s (new, corrected, or canceled). *****Do not process online SF50s until notified to do so by DFAS Civilian Pay.*****

☐ 5) Certified timecards/corrected timecards. *****Do not process online timecards until notified to do so by DFAS Civilian Pay.*****

☐ 6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐ 7) Outside earnings documentation. Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment. Documentation includes W-2 or 1099 statements, payroll documents/records, etc. Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:** When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received. The payroll office must collect the debt from the back pay award. The annual leave will be restored to the employee. Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1.  Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.  The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63).
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.  Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.  Outside earnings documentation statement from agency.
4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.